# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4544 | **DATE** | 10/2/2002 |
| **CASE TITLE** | Superior Environment Corp. Vs. Thomas Mangan et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants motion to dismiss for failure to state a clam pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part. Status hearing set for October 31, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUPERIOR ENVIRONMENT CORP., a Michigan corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No. 02 C 4544 |
| THOMAS MANGAN and MARLIN ENVIRONMENTAL INCORPORATED, an Illinois corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Superior Environmental Corp. (Superior) brought this action against defendants Thomas Mangan (Mangan) and Marlin Environmental Incorporated (Marlin) alleging breach of fiduciary duty, tortious interference with economic advantage and tortious interference with contractual relationships. Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motion is granted in part and denied in part.

## BACKGROUND

The facts are taken from plaintiff's complaint. Defendant Mangan worked for plaintiff Superior, an environmental consulting, engineering and planning firm, from 1995 to 2002. From 1999 to 2002, Mangan served as the vice-president of Superior's Sycamore, Illinois, office, which gave him the responsibility of running the day-to-day operations of the office.

By 2001, the Sycamore office had established a significant presence in the environmental service industry in the Midwest and had a substantial base of customers,

including Cortland Township (Cortland), All Cast Inc. (All Cast) and Harmes Consultants (Harmes). On April 30, 2002, Superior, through its Sycamore office, was under contract to perform services for Cortland and All Cast valued at $25,000 and $42,000 respectively. Superior also expected to perform services worth over $325,000 for Cortland and had been retained by Harmes to perform environmental services as necessary. In March 2002, Mangan, on behalf of Superior had submitted a detailed proposal for a Phase II environmental assessment and asbestos survey for the City of Sycamore and an accompanying professional services agreement. If accepted, this proposal would be worth $9,675.

On April 17, 2002, Mangan notified Jim Quince, Superior's president, via e-mail that he would be leaving Superior and that his final day as vice-president would be April 30, 2002. At first, Quince was not overly concerned with Mangan's departure because Mangan had represented to Quince that he would not be going to work for a competitor.

Mangan, however, went to work for defendant Marlin, a competitor of Superior's. On May 1, 2002, the day Mangan officially began his tenure with Marlin, Mangan submitted a proposal on behalf of Marlin to the City of Sycamore for a Phase II environmental assessment and asbestos survey which was virtually identical to the one he had prepared for Superior. Marlin's proposal was for a price $100 less than Superiors's. Along with this proposal, Mangan submitted a professional services agreement that was a verbatim copy of Superior's. This project was awarded to Marlin.

Additionally, Mangan, using information that he had acquired while working for Superior, contacted Cortland, All Cast and Harmes, and asked them to use Marlin for their environmental service needs. As a result of these solicitations, Cortland and All Cast

terminated their relationship with Superior and retained Marlin. Superior further alleges that Mangan solicited former co-workers from Superior, including Chris Quinto and Matt Hildreth, asking them to come work for Marlin.

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, the court must assume the truth of all well-pleaded allegations, making all inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiff's complaint consists of five counts. Count I alleges that Mangan breached his fiduciary duty owed to Superior. Count II asks for injunctive relief barring the defendants from performing the contracts and contacting former Superior clients. Count III seeks to impose a constructive trust on income received from contracts with former Superior clients. Count IV alleges tortious interference with economic advantage. Count V alleges tortious interference with contractual relationships.

### Count I - Breach of Fiduciary Duty

Plaintiff asks for damages alleging that defendant Mangan breached the fiduciary duty owed to Superior as his employer. In Illinois, an employee owes a fiduciary duty to his employer that ceases upon termination of the employment relationship. Dames & Moore v. Baxter & Woodman, Inc., 21 F.Supp. 2d 817, 823 (N.D.Ill. 1998). Termination of employment will not sever liability for transactions that began during the existence of the relationship or which were founded on information acquired during the relationship. Comedy Cottage, Inc.

v Berk, 495 N.E.2d 1006, 1011 (Ill. App. 1st Dist. 1986). "In the absence of fraud, a contractual restrictive covenant, or the improper taking of a customer list, former employees may compete with their former employers and solicit former customers provided there was no demonstrable business activity before termination of employment." Dowell v. Bitner, 652 N.E.2d 1372, 1379 (Ill. App. 4th Dist. 1995). Employees may go so far as to "plan, form and outfit a competing corporation while still working for the employer" without breaching their duty. Id.

Plaintiff lists seven ways in which Mangan allegedly breached the fiduciary duty owed to Superior.[1] Nowhere in its complaint does plaintiff allege that any information acquired by Mangan was confidential in nature or that he was barred by a restrictive covenant from using the information to compete following his period of employment with Superior. Nor does plaintiff allege that Mangan's transactions after leaving Superior were based on any demonstrable business activity during his employment. Therefore, plaintiff's claim must be that Mangan breached his fiduciary duty to Superior while he was an employee. To the extent that the allegations are based on these actions, plaintiff states a claim. To the extent that the claim is based on actions taken by Mangan after leaving Superior, Count I is dismissed.

## Count II - Injunctive Relief

Plaintiff seeks a preliminary and permanent injunction barring Mangan and Marlin from (1) contacting or working for Superior's clients; (2) contacting Superior's employees; and (3) performing the contract with Sycamore. To warrant an injunction, plaintiff must allege

---

[1]Specifically, the complaint alleges that Mangan (1) solicited Superior's customers, using information he obtained while Superior's vice president; (2) passed off the Superior proposal as Marlin's; (3) used information obtained while vice-president to unfairly compete with Superior; (4) solicited the services of Superior's employees including Chris Quinto and Matt Hildreth; (5) converted Superior's personal property for use at Marlin; (6) failed to timely and truthfully notify Superior that he was leaving to join a rival company; and (7) capitalized on transactions that were founded on information acquired during his tenure at Superior.

that it possesses a clearly ascertained right that needs protection. Cross Wood Products, Inc. v. Suter, 422 N.E.2d 953, 956 (Ill. App. 1st Dist. 1981). As stated above, plaintiff does not allege that the information Mangan used was in any way confidential. While courts recognize and protect the right to be free from business interference from employees, this right must be balanced with an employee's right to enter into competition upon leaving the employer. *Id.* at 956-57. Plaintiff does not allege that any actual competition occurred before Mangan's departure and it has no protectable interest in any of Mangan's activities after leaving Superior. Defendants have the right to compete with plaintiff in any lawful way. Because plaintiff fails to allege any unlawful or unfair conduct by defendants, Count II is dismissed.

Count III - Constructive Trust

Plaintiff next seeks to impose a constructive trust on all profits of Mangan and Marlin as a result of Mangan's alleged breach of duty. To state a claim for the imposition of a constructive trust, plaintiff must make specific allegations of wrongdoing that lead to unjust enrichment of the defendant. Amendola v. Bayer, 907 F.2d 760, 762-63 (7th Cir. 1990). Breach of fiduciary duty may be a proper situation in which to impose a constructive trust. *Id.* The grounds must, however, be so clear, convincing, strong and unequivocal as to lead to but one conclusion. *Id.* Plaintiff does not allege that any actions by defendants have resulted in their unjust enrichment. Any enrichment from these contracts occurred after plaintiff had left Superior and defendants were free to compete with plaintiffs. This business success is not, therefore, unjust, and Count III is dismissed.

Count IV - Tortious Interference with Economic Advantage

Plaintiff next alleges that Mangan and Marlin interfered with Superior's expected

relationships with the City of Sycamore and Harmes. To state a claim for tortious interference with economic advantage, plaintiff must allege (1) a reasonable expectation of entering a valid business relationship; (2) purposeful interference by defendant; and (3) harm to the plaintiff. A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1404 (7th Cir. 1992). While plaintiff alleges these elements as to the City of Sycamore proposal,[2] defendants are protected by a conditional privilege as a competitor of Superior's. A plaintiff has no cause of action against a bona fide competitor absent a claim for unfair competition. Id. at 1404-05. Superior alleges that Mangan and Marlin reused the proposal that Mangan had submitted on behalf of Superior and, thus, their actions were not privileged. Again, absent allegations that the information was confidential or that defendants, in some other way, competed unfairly, defendants were free to compete and Count IV is dismissed.

## Count V - Tortious Interference with Contract

Plaintiff next alleges that defendants interfered with the existing contracts between Superior and clients Cortland, All Cast and Harmes. Plaintiff sufficiently alleges the necessary elements of tortious interference with contracts with respect to Cortland and All Cast.[3] Defendants argue that plaintiff must attach the contracts or plead the details of the written contracts in order to prevail. While the plaintiff may do so, he is under no duty to make more than a plain statement. Quantum Color Graphics, LLC v. The Fan Assoc. Event Photo GMBH, 185 F.Supp. 2d 897, 905-06 (N.D.Ill. 2002). Of course, to prevail on such a claim

---

[2] The complaint does not allege that Harmes changed its relationship with Superior in any way.

[3] Plaintiff alleges: (1) the existence of valid, existing contracts with Cortland, All Cast and Harmes; (2) that Mangan and Marlin were aware of the relationship; (3) that Mangan and Marlin intentionally induced breaches of those contracts; and (4) breaches by Cortland and All Cast causing damages. See A-Abart, 956 F.2d at 1404. Again, plaintiffs do not allege that Harmes breached the contract or changed the parties' relationship in any way.

plaintiff must prove the existence of a valid and binding contract, and more than a mere expectation of a business relationship. <u>A-Abart</u>, 956 F.2d at 1405. At this stage, plaintiff's allegation of the contracts' existence is enough.

## CONCLUSION

For the foregoing reasons, defendants' motion as to Count I is granted, and that count is dismissed to the extent that it alleges conduct after Mangan's departure from Superior. Defendants' motion as to Counts II, III and IV is granted and those claims are dismissed. Defendants' motion as to Count V is denied.

                                                                         JAMES B. MORAN
                                                      Senior Judge, U. S. District Court

Oct. 2, 2002.